and Anne-Marie Jones. And just hold tight for a second while we clear up. Okay. I think we're ready. Whenever you're ready. Okay. Good morning, Your Honors. In this particular case, generally what we're confronted with was when Judge Azzarack was making her ruling for a new trial and throwing out eventually the verdict that was eventually rendered, I submit that the judge, unfortunately, was looking at a case that was overly restrictive and perhaps a myopic view towards the actual length of the retaliation that occurred. The judge focused primarily on the initial steps on the April granting of the permit, the $875 charge. But what it seems to fail to appreciate is that the retaliation in this case was ongoing over a period of months. It was a continued withholding of the permit and then eventually civil suits. So I'm just going to jump into that part right now because by doing so, I'm going to demonstrate that there was a number of inferences that were plainly, we submit, plainly apparent, that the judge is not giving the jury credit for in the conclusions that they came to. And generally speaking, Ms. Jones, she was the head of the Planning Commission Board and that had nine divisions, one of which was the Rental Department, which had two people, a clerk and her. And then the other, there were several other divisions, but another one that's pertinent here is she was also, one of the divisions was the Code Enforcement. So there's an overlap here now between the Rental and Code Enforcement. What ended up happening just, and I'll try and get it as fast as I can, during the course of the several months that transpired after the denial or after refusal to give the permit because they were requesting back fees, which later, as I'll discuss, was admittedly improper, during the refusal to give that permit, during that time, there's several things of note. So I'm just going to highlight them real quick. There was a note in the record that the town attorney's office was consulted in whether a permit should have, a ticket should have been issued. So there's an interplay as these months are going on and Mr. Mangino's getting tickets that the town attorney's office was directing or at least controlling whether tickets should be issued. Then what ended up happening, Mr. Wilson, then the attorney handling, the special prosecutor, had agreed with Mr. Rasti, who was Mangino's attorney at the time, that he agreed that the charges were improper. They shouldn't have been withholding the permit as a result of trying to collect back fees. Shortly after that, he said, I'll inform the rental department to change, to issue the permit and stop collecting the back fees. And he said that he spoke with either a clerk or the commissioner. He didn't recall, but it's significant because it could have been Mrs. Jones. Jones, to her part, says that she was told about the new policy change. Now, Jones was the, no doubt, and the court got that correct, no doubt a policymaker, but yet this policy was effectuated and she was told about it. There's no indication she ever knew or participated in accepting that policy. Then what happened was Mr. Mangino made his application on September 14th and within days, September 22nd, there was an inspection, no issue, and he was granted his permit. The permit had Jones's signature on it. It was an electronic signature granted and she said that she allowed the clerk to use the electronic signature, but I submit, as we'll talk later, that was a jury question as to what knowledge Jones actually had the fact that her signature's on it. Then what happened on 9-28, within days of granting the permit, the town drafted summons and complaints against Mr. Mangino that was filed on October 5th and those complaints sought to hold Mr. Mangino responsible for not having a permit during the time the town admitted they were wrongly withholding it. So they're suing him now for a period in which he didn't have a permit that they admit they should have given. Now, the town also admitted that. Can I just jump in for a moment? So in terms of the review that the district court was doing of this on the Rule 59, this inherent in ruling on that motion is considering the evidence, and so your claims that the nature of the review went too far or was a substitution of the court's credibility, what about the ruling or the nature of these circumstances to your mind means that we should find that this granting of this was an abusive? So what happened is during the course of that decision, it says numerous times how some defense witnesses were highly credible and discounting completely either the appellant's witnesses or completely ignoring or rejecting inferences that are completely reasonable for a jury to have come to. And in that case, the reason I'm saying that is when you look at, and I was trying to lay it out fast, but I didn't do it as swiftly as I would have liked, but when you look at the tight timeframe within the communications between Jones's office and Mr. Wilson and you look at the sums of complaint drafted immediately after they give them the permit for something that's supposed to be used for compliance. When there's no compliance, you're suing somebody you've already given them the permit. You can see that there's inferences where the jury could come to and say, this appears retaliatory. Retaliatory on the part of Ms. Jones. What's the evidence of that? Okay. Well, what happens is the evidence in this particular case, I've opened with this to say that Jones's participation in this whole thing, first of all, it's a retaliation case, so we're not going to get admissions, or generally speaking, I would say you wouldn't get admissions, you wouldn't get a document, a smoking gun. It's not how those cases generally work. They usually are circumstantial. In this particular case, to answer your question, Judge, is that her participation, she's saying she didn't know what was going on. She's basically denying all knowledge of it. But during the course of this, the code enforcement is one of her divisions. Mr. Wilson is saying, I had a conversation with possibly her or the clerk, and within days of that happening, days of that conversation, now there's a permit given, like he said, and lawsuits that follow. And so it's an inference that a jury was reasonably capable of making that, you know, Jones, even though she's denying it, with the evidence that presented, she could have very well been involved. Was there evidence generally that Jones played a role in the decisions about when to initiate litigation? No, actually, Judge, there isn't. There's no direct evidence. I mean, that might have been something that could plug the circumstantial gap a little bit. It certainly would have if we had had an admission and so on. But there is no direct evidence to initiate litigation. No evidence of that. And I'm just curious, I mean, you obviously had an opportunity for discovery to try to develop the link. We did. And she's taking the position that she has no— she didn't even know who John Mangino was. So that's her testimony. What happened was, Judge, the reason we're saying that she's involved is because of the temporal proximity. We believe the law allows the courts and the jurors, of course, to say, you know what, shortly after Mangino— Mangino has a string of communications, complaints and objections and so on. At some point, after they had to agree that Mr. Mangino was right, I don't want to say it's sour grapes, but it was kind of, okay, we're going to give you your permit and here's the lawsuit. Right. No, I see that. I see this sort of inference of retaliatory animus. What I'm struggling with is the way that the jury was instructed. The inference has to run through Jones. It all kind of turns on Jones. So even if someone else had it in for your client and brought this for that reason, that doesn't get us Jones. Well, to focus as best I can the link that we're coming to, while there's no direct evidence, which I would concede, the link is self-evident in the fact that after finally conceding that they were improperly withholding the permit, he has a conversation changing a policy within Jones's department, and also Jones is part of—she's the commissioner of—well, not the commissioner, but one of the divisions under her auspices is the town code enforcement. So what happens is there's an interplay between the code enforcement part and the rental department. That goes through her. Both of those go through her. And now we have a conversation with Mr. Wilson, who's effectuating a policy change with her, and shortly after effectuating and agreeing that there was wrong, the summons and complaints follow. So our point is that we believe the temporal proximity of that permits an inference for the jury to say, she knew. She's saying she didn't know, but we believe she did. And apparently they did. They even awarded—they didn't believe Jones. There was a punitive damage awarded here against Jones. So her credibility, at least in the eyes of the jury, is questionable. Now, I don't know if I've answered your question, but that's where we were heading with that. Unfortunately, there is no direct evidence, and it would have to be a circumstantial case. The—aside from Jones, because— I'll give you a moment, but then you should wrap up. You'll have a rebuttal. I'm sorry. I'm sorry. Yes, Judge. The—aside from Jones being tied in, we still maintain that this court could, as could the court below, find that Wilson was a policymaker in his own right. We're not unmindful of the court's decisions, drawing a distinction between decision makers and policy makers. We're aware of that distinction. What we're focusing on in this particular case is that there's a statute, that allows the subordinates to act in the place of and for the town attorney. That, along with the fact that Mr. Wilson ran his own department, so to speak, in terms of prosecuting, we think within that area, which that particular area, he had policymaking authority. If the jury had been instructed to that effect, and the question was whether there was sufficient evidence to support liability on that theory, that seems like that would be a conversation that would make a lot of sense. But I'm trying to figure out how we could backfill a jury verdict on the basis of a theory that was never presented to the jury in the first place. Well, Judge, what happens is it wasn't objected to either. So what ended up happening is, as Mr. Wexler points out, he believes that's a flaw in the jury verdict. If that's the case, Judge Azraq, even after the fact, see, in this particular case, saying that Wilson was the policymaker doesn't change the verdict at all. It's a question of law that a court can and should decide on. If they found, even if this court has that authority too, found that Wilson is qualified as a policymaker, it doesn't change the verdict at all. The verdict remains the same. It's simply a matter for the court to determine. Well, no, because the jury would have to then have found that Wilson exercised that policymaking authority and a retaliatory authority. I mean, that doesn't answer all of the questions that you'd need to support the jury verdict. Respectfully, Judge, I disagree. But the reason I do is because when the jury is told that Wilson is a policymaker, just like Jones is told, I mean, they told Jones was a policymaker, then they're talking about the jury has to find whether there's retaliation. Now, in this particular case, they did find on the facts that there was retaliation. The issue of whether the policymaker is either Jones or Wilson is one that ties in the liability of the town. But that's a legal construct. Okay, but retaliation, you voiced it in the passive voice whether there was retaliation. Doesn't there have to have been retaliation by a person, an identified person, and that's what gets you to the town, or am I misunderstanding the law? Well, actually, Judge, it would normally be retaliation either by a person or someone on behalf of the town. Right. And that's what drives it. You're not misunderstanding the law. I would presume to say that. But in this case, the jury found that the facts were retaliatory. And so when they find that way, whether the town is going to be held in libel or not, there has to be an identification of a policymaker, a final policymaker who was involved in the retaliation. In this case, whether they told it was Jones or Wilson, it doesn't change the verdict, the verdict itself. They wouldn't have found any different if we look at the verdict. There's no difference in the findings that whether they said it was Jones or Wilson, it would still be the same. To answer your question one step farther, if there was an instruction that somehow would have fundamentally changed the verdict, meaning there's something that misled the jury on the conclusions they would have come to, as you're kind of alluding to, then a verdict, the instruction could be misleading significant enough to say, no, you know, we can't redo it. It would have to be addressed again in a trial or whatever. In this case, I'm saying that it's a question of law. It doesn't change the verdict at all. Well, but I'm interested in that latter thing that you said, because if the instructions were defective, but you didn't preserve an objection to the instructions below, isn't that the end of the game over? I'm not the one who didn't preserve it. The defense didn't object to the instructions. So what happens here is it's after the case that- Well, no, but your client's the one who suffers from the reliance on Jones as the retaliatory actor and tied to the city, isn't it? I'm saying that Jones is sufficiently- Yes, Judge, I understand what you're saying. I'm saying that Jones is sufficiently- In pages 23 and 24 of our brief, I believe there's a section that ties up where you can have shared authority and approval. So Jones' relationship circumstantially is sufficiently close enough, a nexus sufficient, that Jones' approval and participation by circumstantial evidence is sufficient for them to impose the liability here. But I'm also saying that even if it weren't, the court can, after the fact, just like after the fact, she's finding the decision she could appoint. She could say, you know what? This could be cured by a legal construct just saying that Wilson was the policymaker. All right. Okay? All right. Thank you. Thank you.  May it please the court. William Wexler on behalf of the defendant, Apollides. Pursuant to Rule 59, the district court granted a new trial because the verdict was against the overwhelming weight of the evidence, against and without legal support. Therefore, the determination was well within the district court's discretion under settled Second Circuit precedent. In essence, the appellants ask the court to vacate the verdict from the legally supported second trial they lost and reinstate the erroneous verdict from the first trial they won. Let me discuss the permit denial. The permit denial fails for one fundamental reason. The town demanded $875 in rental permit fees before any protected speech occurred. It's illogical, borderline absurd, that the plaintiff's theory is that the town retaliated against plaintiff's speech before he spoke. In February of 2009, a final notice was issued before any protected activity. The final notice was you need to pay $875 in back fees because you rented a home for 10 years and never bothered having it inspected or paying for the rental fee. I think it was $100 biannually. And the town, the evidence of trial, was hypervigilant because a year or two before this, a family had been asphyxiated or burned to death in a home that was not inspected. So the undisputed fact drives the entire causation that the protected speech occurred after Commissioner Jones' activity. When the plaintiff later applied in March and submitted only $125, not the back fee, the town rejected the application for failure to pay the previous demand. Nothing changed after the alleged protected speech. The town position was identical before and after. The permit denial was purely administrative. Based on plaintiff's own noncompliance, he refused to pay the fee and refused to have the home inspected. The temporal proximity allegation or theory cannot work. This court has held that when or during the course of action, the action begins before the protected speech, the proximity argument cannot support retaliation. That's in the Moscow propane case that we cited. That's exactly what happened here. The town's fee position was established before any speech. There's no evidentiary bridge from speech to adverse action. The jury's verdict required abject speculation, which Judge Azraq found. Rule 59 exists to prevent that result. The second fatal defect was knowledge. There was no evidence, zero, that Commissioner Jones ever received plaintiff's letters, was copied on them, was forwarded them, was told about them, or even knew about them. The letters were addressed to the town attorney's office and the supervisor, not to Jones. And the letters were not complaining about Jones. They were complaining about the method of service used by the town in filing the summonses for having an illegal rent apartment. So it didn't involve anything with Jones, and there was no both trials. There was zero evidence that she had any idea. I think that she had nine divisions under her. The rental permit was basically a clerical function. And she said, in fact, the only testimony was an auto pen that sent out the standard letters before the speech. Without knowledge, there can be no retaliatory motive. And the court expressly found the record insufficient on that point. Even assuming the court found that there was knowledge on behalf of Jones, that implicates the Mount Healthy defense. The town demanded $875 before the speech, and the town demanded $875 after the speech. The fact that the town attorney or the assistant town attorney at the time waived the $875 back fee does not retroactively transform the earlier denial into retaliation. And the court found that the same decision would have been made absent the speech. That finding is entitled to substantial deference. In fact, the testimony below was the assistant town attorney. In fact, let me back up. In the second trial, the assistant town attorney said, I was wrong. I was a young junior assistant town attorney. The town code provides for back rent. He didn't know that. And he testified that he told Jones, listen, we want to get, again, he had that horrible death in his rearview mirror. We want to get this thing inspected. Waive the $875. Who cares? And she said, OK, we'll waive the $175. But that was nothing to do with his protected speech. The jury found that Commissioner Jones individually liable for the initiation of four civil enforcement suits. The town code allows the town attorneys to bring civil suits in the local district court to compel recalcitrant landlords in addition to the summonses. Unfortunately, the summons get adjourned. It takes years. So they bring a civil suit. I don't know. I think they were seeking $13,000 as another tool to say, please get this inspected. There was, once again, no evidence that Jones had any involvement. She wasn't involved in filing them. There was no evidence she directed them. There was no evidence she authorized them. There was no evidence she knew about them. And no testimony from the town attorney's office that she was involved. The complaints were drawn and filed by the assistant town attorneys. Nor would she have any knowledge of what the town attorney's office was doing. She was the commissioner planning. And there was zero testimony to connect her. Not a letter, not a statement, nothing. Both town assistant town attorneys testified. Neither implicated Jones. The court concluded that the verdict required pure speculation and was without legal support. The conclusion is, her conclusion, Judge Azrax, is not an abusive discussion. It's a straightforward application of Rule 59. This is not a Rule 50 appeal. Under this court's RADEL and DLC management, a district court may weigh the evidence, assess the credibility, and order a new trial where the verdict is seriously erroneous or a miscarriage of justice. That is exactly what happened here. Judge Azrax sat through the trial, heard the witnesses. Now, the appellants make a real play in their brief to this court that, oh, Judge Jones instituted, pardon me, Judge Azrax instituted her beliefs instead of the jury's with respect to the credibility of witnesses. But there's a dichotomy there because the plaintiffs failed to produce any evidence. Jones testified, this is what I did. Judge Azrax, in her, I think it was a 29 or 30-page decision, parsing through the record, said, I credit her. It wasn't just that she credited A over B. There was no evidence on the other side to discredit her. This wasn't he said, she said. This was there was no evidence, and I credit her. So to leave out the first part, as they do in their brief, doesn't do justice. She evaluated the record. Her determination that the verdict lacked legal support is entitled by this court's ruling substantial deference. The court reverses under Rule 59 for only a clear abuse of discretion. There was none here. On Monell liability, Jones, the plaintiff charting their own course, shows one Monell theory, that Jones was a policymaker, which she was, whose retaliatory act constituted municipal policy. Once the district court properly determined that the evidence was insufficient to sustain a verdict against Jones individually, the Monell claim necessarily collapses. There was no alternative Monell theory submitted to the jury. The jury was never instructed that the town attorney or anyone else was a final policymaker. Well, it's interesting when you look at the instructions in that first trial, the jury was asked a lot of generic questions about whether defendants retaliated, whether the suits were retaliatory, etc. And even in the verdict sheet, the first question is whether the town unlawfully retaliated, and then the second question is whether the plaintiff proved by preponderance of the evidence that Jones was liable. In the face of that record, I'm just curious what your thought is about the notion that, well, the jury clearly found that this was done on a retaliatory basis. It's a legal question of law as to whether Wilson was a policymaker, and so given the jury's finding there's sufficient evidence to find retaliation through Wilson, as a matter of law, the court should have substituted that theory. Okay, let me unpack, and I may not do it in your exact order. First of all, the plaintiffs never pursued that Wilson, who at the time was a junior assistant town attorney, they never pursued any theory that he was a policy decisionmaker, and generally that is instituted by you either have people testify that here's 58 policies, that was not there, or here's the town code. There was none of that. So the plaintiff didn't pursue that to now claim, oh, that's kind of what we meant. It's not a way to get where they want to go. You can't not pursue it. And of course, Judge Azraq did not give that charge because it wasn't pursued. So why would she invent charges that didn't track the theory of the plaintiff's case? The only allegation that Jones, who was a commissioner, admittedly was a policymaker, but that fails because the speech occurred after. It can't be, how can you retaliate before the speech? I mean, there was no evidence in the record that Jones or any other town employee was clairvoyant. It's illogical, and this court has said that, and that's the must-go propane. I mean, any way you look at it, it cannot withstand. I think I answered your questions, Judge. But Judge Azraq correctly held that without the underlying constitutional violation by Jones, the Monell theory cannot stand. There was no theory or there was no allegations for Monell of widespread or persistent practice that's so permanent and well-settled as to constitute a municipal policy. There was no evidence of proof of similar retaliatory civil suits, no evidence of a practice of retaliatory enforcement, no patterned evidence whatsoever, no internal policy documents, no proof of ratification. This case involved a single landlord and a single enforcement sequence. That cannot constitute municipal custom as a matter of law. So the plaintiffs, just hearkening back, the plaintiffs never sought a Monell theory that the assistant town attorneys were policymakers, but they clearly weren't. But that's their burden, and they failed to. So why would they expect now this court to institute or require Judge Azraq to kind of gainsay and try to make a policy? But even if she gave the charge, suppose she gave the charge that they were policymakers, which they did, she did in the second trial, and even then the jury rejected it. And she said, I'm only doing it for appellate purposes. It's in the record. And she said, if a jury returns a verdict on behalf of the plaintiff, I'm tossing it. Because it was clearly, I mean, I remember the oral argument where I said, Judge, you're really going to, I said respectfully, you're really going to charge a jury with no evidence that Joe Wilson, who was an assistant town attorney for two years, made policy for the town attorney's office? And I think she agreed and preserved it for appellate. That was the second trial. So for them now to suggest, oh, really, that's the Minnell theory that we really wanted, that's too late. Once again, the record contained zero evidence that actually the two most junior assistant town attorneys had final policymaking authority. And the jury was never asked to determine this because the plaintiff never advanced the theory. Pardon me? No, I think you've made your argument. Thank you. All right. Thank you. I'm going to breeze through this quickly because I only have a few minutes. But I want to reiterate again a constant theme that defense counsel and the court keeps focusing on 875 saying there was no retaliation before the demand for 875. That, unfortunately, begs the issue of the case that was presented. It's a different case that was presented and a different finding that the jury made. Even if I were to concede that there was, as counsel says, no retaliation before the 875, the law as set forth in the brief says that even if they were initially permitted not to, that there was nothing there and they were permitted to withhold the permit, which in this case they admitted they weren't, but even if they were, the continued withholding and then the subsequent civil suits is clearly what the jury focused on and clearly what the jury found. Unfortunately, counsel's argument excises that subsequent path that I submit is important. Just briefly, counsel. Was the jury instructed of that theory? I'm sorry. Of continuing? Yes, it was. We talked about it was withheld. They didn't give the permit. And also that the civil suits was clearly, the civil suits was focused front and center because just to be candid, that is the flagship of this retaliation. The civil suits in our minds was the clearest act of retaliation. Counsel goes on to say that it was another tool to gain compliance, the civil suits, but how's that a tool to gain compliance when they gave us the permit and then they sued us? There's no compliance there. They didn't discontinue the suit after they filed it. It stayed on the books for years. There was a certain amount of litigation that went on. There's no compliance there. That's clearly penal. There was a brief statement about some tragedy and somebody not permitting inspection. Not that that matters, but real quick, as I recall in that record, that tragedy occurred to a house that was already condemned. It's not at all a similar pattern to this. No rental permit was issued. It was a condemned house. They say that there's no evidence, but once again, I submit it was circumstantial evidence given the interplay between Jones and the town attorney, Wilson, and the temple proximity of how it transpired. In short, in the end, I would simply say that they didn't like the fact that they were wrong. Wrongly withholding, that they had to change their policy, and then after not liking that they changed their policy, they were going to get their pound of flesh. That's what happened with the summons to complaint. To us, that was the circumstantial tie. It was all temple proximity related, and that's how we rest on that case. All right. Thank you very much. Thank you to both of you. We will also take this case under advisement. That concludes our argument calendar. We have two cases that we'll be taking on submission, U.S. v. McCrone and Chinnery, and then also a manual in name v. John Doe 1. With that, I will ask our courtroom deputy to please adjourn us. Court stands adjourned. Thank you.